1
2
3
4
5
6
7

8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11   Overhill Farms Inc.,          )   CV 14-03533-RSWL (PLAx)
                                    )
12                  Plaintiff,      )   **ORDER re: DEFENDANT'S**
                                    )   **MOTION TO DISMISS OR IN**
13                                  )   **THE ALTERNATIVE TO**
         v.                         )   **TRANSFER TO THE UNITED**
14                                  )   **STATES DISTRICT COURT**
     West Liberty Foods LLC,        )   **FOR THE SOUTHERN**
15                                  )   **DISTRICT OF IOWA** [13]
                                    )
16                  Defendant.      )
                                    )
17                                  )
                                    )
18   _____    )

19        Currently before the Court is Defendant West

20   Liberty Foods LLC's ("Defendant") Motion to Dismiss or

21   in the Alternative to Transfer to the United States

22   District Court for the Southern District of Iowa [13].

23   The Court, having reviewed all papers submitted

24   pertaining to this Motion, **NOW FINDS AND RULES AS**

25   **FOLLOWS**:

26        The Court hereby **GRANTS** Defendant's Motion to

27   Dismiss pursuant to 12(b)(2), **DENIES as moot**

28   Defendant's Motion to Dismiss pursuant to 12(b)(3), and

**DENIES as moot** Defendant's Motion to Transfer.

## I. BACKGROUND

Plaintiff Overhill Farms Inc. ("Plaintiff") is a corporation incorporated under the laws of the State of Nevada and has its principal place of business in Vernon, California.  Compl. ¶ 3.  Plaintiff is a manufacturer of food products, including frozen prepared meals, for companies that sell prepared meals and other food products.  Id. at ¶ 7.  Plaintiff manufactures prepared meals that include ground turkey for "one of Plaintiff's most important . . . customers," which then resells the prepared meals to the ultimate consumers of the meals.  Id. at ¶ 8.

Defendant is a limited liability company organized under the state of Iowa.  Id. at ¶ 4.  Plaintiff alleges that since early 2004, it sourced ground turkey from Defendant pursuant to quality specifications, purchase orders, invoices, emails, and related communications.  Id. at ¶ 9.  Plaintiff also alleges that starting in January 2004, the Parties entered into numerous contracts for Defendant to manufacture, sell, and deliver ground turkey to Plaintiff at its facility in Vernon, California.  Id. at ¶ 10.  Plaintiff provided its ingredient specifications to Defendant, which require (a) the product to meet all standards for human consumption and to conform to laws and regulations, (b) the product to be manually deboned to eliminate bones and cartilage, and (c) for a bone

collector to be used.  Id. at ¶ 11.  Since 2004,
Plaintiff has purchased over 5 million pounds of ground
turkey from Defendant.  Id. at ¶ 6.

On November 3, 2011, Defendant provided Plaintiff a
Continuing Guaranty, Warranty, and Indemnity Agreement
("Guaranty").  Id. at ¶ 13.  On or about October 12,
2012, Plaintiff submitted Purchase Order 193375 to
Defendant for 27,500 pounds of ground turkey.  Id. at ¶
14.  Upon receipt of the ground turkey, Plaintiff used
it to create turkey patties for turkey burger
sandwiches for one of its customers.  Id. at ¶ 18.
Plaintiff shipped the turkey burger to its customer,
which distributed the burger to its end-user customers.
Id. at ¶ 20.  On or about February 5, 2013, Plaintiff
received notice from its customer that consumers of the
turkey burger sandwiches using Defendant's ground
turkey reported finding pieces of bone and bone chips
in the turkey patties.  Id. at ¶ 21.

As a result of Defendant's actions, Plaintiff
asserts claims for (1) breach of sales contract, (2)
breach of guaranty, warranty, and indemnity agreement,
(3) breach of the implied covenant of good faith and
fair dealing, (4) breach of express warranty, (5)
breach of the implied warranty of merchantability, (6)
breach of the implied warranty of fitness for a
particular purpose, and (7) negligence.  To date,
Plaintiff has incurred no less than $340,041.27 in
damages, and also seeks to recover lost profits and

other damages caused by interference with or loss of customer relationship.  Id. at ¶ 40.

Plaintiff filed its Complaint on May 7, 2014 [1]. Defendant filed the instant Motion on July 10, 2014 [13].  Plaintiff filed an Opposition on July 30, 2014 [16] and Defendant filed its Reply on August 6, 2014 [19].  This matter was set for hearing on August 20, 2014 and was taken under submission on August 15, 2014.

## II. LEGAL STANDARD

**A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a district court cannot proceed against a defendant over which it lacks personal jurisdiction unless that defendant has waived the requirement.  See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702–03 (1982).  Because no applicable federal statute governs jurisdiction in this case, California personal jurisdiction law applies. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).  The exercise of personal jurisdiction over a nonresident defendant requires the presence of two factors: (1) California's laws must provide a basis for exercising personal jurisdiction, and (2) the assertion of personal jurisdiction must comport with due process.  Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1477 (9th Cir. 1986).  California's long arm statute permits the

exercise of personal jurisdiction to the fullest extent permitted by due process.  See Cal. Civ. Proc. Code § 410.10; Panavision, 141 F.3d at 1320.  "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004).  Thus, only a due process analysis is required here.

Due process requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  The plaintiff bears the burden of proving that each defendant has sufficient minimum contacts with the forum state that warrant the court's exercise of personal jurisdiction. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1130 (9th Cir. 2003) ("Personal jurisdiction over each defendant must be analyzed separately."); Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). Depending on the nature and scope of the defendant's contacts with the forum, jurisdiction may be general or specific to a cause of action.  Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991).

When a defendant's contacts with the forum state

are "substantial" or "continuous and systematic,"
general jurisdiction may be exercised over that
defendant for any cause of action, even if it is
unrelated to the defendant's activities within the
forum state.  <u>Schwarzenegger</u>, 374 F.3d at 801-02; <u>Data</u>
<u>Disc, Inc. v. Sys. Tech. Assocs.</u>, 557 F.2d 1280, 1287
(9th Cir. 1977).  In cases where a defendant's contacts
are insufficient to support an exercise of general
jurisdiction, more limited specific jurisdiction may be
found where a cause of action arises out of or is
related to the defendant's activities in the forum
state.  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462,
472-73 (1985); <u>Ballard v. Savage</u>, 65 F.3d 1495, 1498
(9th Cir. 1995).  "Specific jurisdiction may be
exercised with a lesser showing of minimum contacts
than is required for the exercise of general
jurisdiction." <u>ACORN v. Household Int'l, Inc.</u>, 211 F.
Supp. 2d 1160, 1164 (C.D. Cal. 2002).  The Ninth
Circuit uses a three-part test to determine whether
there is specific jurisdiction over a defendant: (1)
the defendant either purposefully directed its
activities at the forum or purposefully availed itself
of the privilege of conducting activities in the forum;
(2) the plaintiff's claim arises out of or results from
the defendant's forum-related activities; and (3) the
court's exercise of personal jurisdiction over the
defendant is reasonable.  <u>Boschetto v. Hansing</u>, 539
F.3d 1011, 1016 (9th Cir. 2008).

1    "When a district court acts on a defendant's motion

2    to dismiss under Rule 12(b)(2) without holding an

3    evidentiary hearing, the plaintiff need make only a

4    prima facie showing of jurisdictional facts to

5    withstand the motion to dismiss." Ballard, 65 F.3d at

6    1498.   In order to make a prima facie showing, the

7    plaintiff must produce admissible evidence, which, if

8    believed, would be sufficient to establish the Court's

9    personal jurisdiction.  Enriquez v. Interstate Grp.,

10   LLC, No. 11-CV-05155 YGR, 2012 WL 3800801, at *3 (N.D.

11   Cal. Aug. 31, 2012).  Accordingly, a district court is

12   to take uncontroverted allegations in the complaint as

13   true.  AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d

14   586, 588 (9th Cir. 1996).  However, "mere allegations

15   of the complaint, when contradicted by affidavits, are

16   [not] enough to confer personal jurisdiction of a

17   nonresident defendant.  In such a case, facts, not mere

18   allegations, must be the touchstone." Taylor v.

19   Portland Paramount Corp., 383 F.2d 634, 639 (9th Cir.

20   1967).  See also Chem Lab Prods., Inc. v. Stepanek, 554

21   F.2d 371, 372 (9th Cir. 1977); Cummings v. W. Trial

22   Lawyers Ass'n, 133 F. Supp. 2d 1144, 1154 (D. Ariz.

23   2001).  Parties may go beyond the pleadings and support

24   their positions with discovery materials, affidavits,

25   or declarations.  Am. Inst. of Intradermal Cosmetics,

26   Inc. v. Soc'y of Permanent Cosmetic Prof's, No. CV 12-

27   06887 GAF JCGX, 2013 WL 1685558, at *4 (C.D. Cal. Apr.

28   16, 2013).  "[C]onflicts between the facts contained in

1   the parties' affidavits must be resolved in [the

2   plaintiff's] favor for purposes of deciding whether a

3   prima facie case for personal jurisdiction exists."

4   AT&T, 94 F.3d at 588.   "At the same time, however, the

5   plaintiff must submit *admissible* evidence in support of

6   its prima facie case."   Id. (emphasis added).

7                        **III. ANALYSIS**

8   **A.   Evidentiary Objections**

9        The Parties have each filed objections to certain

10  declarations.   See Dkt. ## 17-19.   To the extent the

11  Court relies upon the objected to evidence in reaching

12  its conclusions, the Court addresses those objections

13  below.   However, to the extent the Court has not relied

14  on the objected to evidence, it need not rule on those

15  evidentiary objections and deems those objections **as**

16  **MOOT**.

17  **B.   Defendant's Motion to Dismiss Pursuant to Fed. R.**

18       **Civ. P. 12(b)(2)**

19       1.   General Jurisdiction

20       "A defendant whose contacts with a state are

21  'substantial' or 'continuous and systematic' can be

22  haled into court in that state in any action, even if

23  the action is unrelated to those contacts."   Bancroft &

24  Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082,

25  1086 (9th Cir. 2000) (citing Helicopteros Nacionales de

26  Colombia, S.A. v. Hall, 466 U.S. 408, 415 (1984)).

27  "This is known as general jurisdiction."   Id.   "The

28  standard for general jurisdiction 'is an exacting

standard, as it should be, because a finding of general
jurisdiction permits a defendant to be haled into court
in the forum state to answer for any of its activities
anywhere in the world.'"   Mavrix Photo, Inc. v. Brand
Techs., Inc., 647 F.3d 1218, 1224 (9th Cir. 2011)
(quoting Schwarzenegger, 374 F.3d at 801).

    "To determine if a defendant's activities within
the forum are 'continuous and systematic' or
'substantial,' the court must examine all of its
activities impacting the state." Barantsevich v. VTB
Bank, 954 F. Supp. 2d 972, 983 (C.D. Cal. 2013) (citing
Helicopteros, 466 U.S. at 411). "Factors to be taken
into consideration are whether the defendant makes
sales, solicits or engages in business in the state,
serves the state's markets, designates an agent for
service of process, holds a license, or is incorporated
there." Bancroft, 223 F.3d at 1086 (citing Hirsch, 800
F.2d at 1478).

    "[D]etermining whether a corporate defendant's
contacts in a particular case are substantial and
continuous turns on the 'economic reality of the
defendants' activities rather than a mechanical
checklist.'"   Tuazon v. R.J. Reynolds Tobacco Co., 433
F.3d 1163, 1173 (9th Cir. 2006) (citing Gates Learjet
Corp. v. Jensen, 743 F.2d 1325, 1331 (9th Cir. 1984)).

    Here, Defendant argues that the Court lacks general
jurisdiction over it because it is an Iowa limited
liability company and its headquarters and two of its

1  processing plants are located in Iowa.  Defendant

2  further asserts that it has no facilities, offices,

3  operations, employees, real estate, or bank accounts in

4  California.  Mot. 6:25-28.

5      Plaintiff argues that Defendant is subject to

6  general jurisdiction in California because Defendant is

7  registered to do business in California, has designated

8  an agent for service of process in California, solicits

9  business from California residents, and makes

10  substantial sales from delivering products to

11  California residents.  Opp'n 6:20-9:3.

12      On balance, the Court finds that Plaintiff has

13  failed to meet its burden of establishing a prima facie

14  showing for general jurisdiction as it has failed to

15  demonstrate that Defendant has engaged in "continuous

16  and systematic general business contacts," that

17  "approximate physical presence" in the forum state.

18  See Mavrix, 647 F.3d at 1224.

19      The Court acknowledges that, while it is relevant

20  that Defendant may be registered to do business and has

21  designated an agent for service of process in

22  California, these acts alone are insufficient to

23  support a finding of general jurisdiction over

24  Defendant.  See Flame S.A. v. Pasha Fin., Inc., No. CV

25  10-5245-GW (MANx), 2010 WL 2902774, at *3 (C.D. Cal.

26  July 26, 2010); See Beijing Automotive Indus. Import

27  and Export Corp. v. Indian Indus., Inc., 2013 WL

28  4040072, at *2 n.1 (C.D. Cal. Aug. 7, 2013); Gray Line

<u>Tours v. Reynolds Elec. & Eng'g Co.</u>, 193 Cal. App. 3d
190, 193-95 (1987) (holding that designation of an
agent for service of process and qualification to do
business in California alone did not constitute grounds
for general jurisdiction); <u>see also</u> <u>DVI, Inc. v.</u>
<u>Superior Court</u>, 104 Cal. App. 4th 1080, 1095 (2002)
(holding that personal jurisdiction did not exist even
though the defendant company registered to do business
in California, had a California agent for service of
process, and had two officers residing in California).

The Court thus turns to Plaintiff's allegation that
Defendant received millions of dollars from sales of
products to California residents.  Plaintiff alleges
that Defendant delivered more than 5 million pounds of
ground turkey to Vernon, California, which totaled more
than $6.7 million sold to Plaintiff.  Devore Decl. ¶ 5.
Plaintiff submits that Defendant has seventy-five
California customers.  <u>Id.</u>  Plaintiff further submits
that, based upon Defendant's assertion that California
customers were responsible for 3.8% of its overall
revenue for the limited time frame of eight years,
Defendant's overall revenue from California during the
2005-2013 time period was over $25 million.  Opp'n 8:2-
7 (citing Devore Decl. ¶ 5).

Defendant, on the other hand, provides evidence
that the 5 million pounds of ground turkey that were
processed and shipped to Plaintiff during the period
referred to in the Complaint represented only

1  approximately .11% of the overall pounds of meat that
2  Defendant processed during that time period.   Hansen
3  Decl. ¶ 4.

4      The percentage of a company's sales in a given
5  state is generally irrelevant.   Lakin v. Prudential
6  Sec., Inc., 348 F.3d 704, 709 (8th Cir. 2003).
7  Instead, the focus is on whether a defendant's activity
8  in the forum state is "continuous and systematic."   Id.
9  (citing Helicopteros, 466 U.S. at 414).   "Many
10 companies conduct millions of dollars in sales
11 worldwide yet only do a small percentage of their sales
12 in any one state."   Id. (citing Gator.Com Corp. v. L.L.
13 Bean, Inc., 341 F.3d 1072, 1074 (9th Cir. 2003)).   The
14 relevant inquiry is "not whether a percentage of the
15 company's contacts is substantial for that company;
16 rather, the inquiry focuses on whether the company's
17 contacts are substantial for the *forum*."   Id.

18     Thus, the fact that Defendant's sales to California
19 customers may have constituted only 3.8% of its overall
20 revenue over an eight year period is irrelevant.
21 Nonetheless, the Court finds that it lacks general
22 jurisdiction over Plaintiff.

23     As an initial matter, engaging in commerce with
24 residents of the forum state is not in and of itself
25 the kind of activity that approximates physical
26 presence within the state's borders.   Glencore Grain,
27 284 F.3d at 1125 (citing Bancroft, 223 F.3d at 1086).
28 And, while Plaintiff alleges that Defendant sold $25

12

million in ground turkey sales to all of its California customers, Plaintiff provides no argument or support that $25 million is substantial for California.   In fact, other courts have found that, even where a nonresident defendant sells millions of dollars worth of products to the forum, this activity can still be insufficient to support a finding of general jurisdiction where the contracts at issue were negotiated outside of the forum.   See Bearry v. Beech Aircraft Corp., 818 F.2d 370, 375-76 (5th Cir. 1987) (no general jurisdiction where nonresident corporation selling millions of dollars of products to the forum when such sales were negotiated, executed, and performed outside the forum).   Here, though not explicitly stated in either Party's papers, the Parties appear to have negotiated the relevant Purchase Orders via phone, email, or other interstate communication given that they were located in different states for the duration of the negotiations.   See Porter Decl. ¶¶ 5-6.   Thus, while Defendant may have made $25 million in ground turkey sales to California residents, this assertion alone is insufficient to confer general jurisdiction over Defendant.

Plaintiff cites to LSI Indus. v. Hubbel Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000) to support the proposition that general jurisdiction exists where the defendant generated several millions of dollars in annual sales in the forum state.   However, the

defendant in that case had a "broad distributorship network in [the forum state]." Id.  Defendant here has no facilities, offices, operations, employees, real estate, or bank accounts in California (Hansen Decl. ¶ 3), nor does it appear that Defendant maintains a network of distribution in California.  See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1124–25 (9th Cir. 2002) (holding that the presence of a sales agent in California, sales through California, and shipments through California ports did not confer general jurisdiction, when "[t]here is no evidence that [the defendant] owns property, keeps bank accounts, has employees, solicits business, or has designated an agent for service of process in California")).  And, while Plaintiff argues that Defendant's solicitation of business from California residents supports a finding of general jurisdiction, Plaintiff only cites to evidence supporting that Defendant may have solicited business from *Plaintiff*. See Opp'n 7:8-17.  Plaintiff fails to show that Defendant solicited business from other California businesses.  As such, the Court disregards Plaintiff's argument on this point.

   The standard for general jurisdiction is stringent. Bancroft, 223 F.3d at 1086.  Here, in examining all of Defendant's activities impacting the forum state, the Court finds that Plaintiff has failed to meet the high standard of showing that Defendant's contacts

14

approximate physical presence in the forum.  The Court
thus finds that it lacks general jurisdiction over
Defendant.

    2.  Specific Jurisdiction

    To determine whether to exercise specific
jurisdiction over a nonresident defendant, this Court
must consider the test adopted by the Ninth Circuit to
ensure that the exercise of specific jurisdiction
satisfies the requirements of due process.  Cubbage v.
Merchent, 744 F.2d 665, 668 (9th Cir. 1984).  Specific
jurisdiction is proper only when (1) the defendant has
performed some act by which he purposefully avails
himself of the privilege of conducting activities in
the forum, thereby invoking the benefits and
protections of its laws; (2) the claim arises out of,
or results from, the defendant's forum-related
activities; and (3) the exercise of jurisdiction is
"reasonable."  Terracom v. Valley Nat'l Bank, 49 F.3d
555, 560 (9th Cir. 1995) (citing Shute v. Carnival
Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990)).

    The plaintiff bears the burden of satisfying the
first two prongs of the test.  Schwarzenegger, 374 F.3d
at 802 (citing Sher v. Johnson, 911 F.2d 1357, 1361
(9th Cir. 1990)).  If the plaintiff fails to satisfy
either of these prongs, personal jurisdiction is not
established in the forum state.  Id.  If the plaintiff
succeeds in satisfying both of the first two prongs,
the burden then shifts to the defendant to "present a

1   compelling case" that the exercise of jurisdiction

2   would not be reasonable.  Id.

3           a.  *Purposeful Availment*

4       The plaintiff may satisfy the first prong by

5   demonstrating that the defendant either purposefully

6   availed itself of the privilege of conducting

7   activities in the forum, or purposefully directed its

8   activities at the forum.  Wash. Shoe Co. v. A-Z

9   Sporting Goods Inc., 704 F.3d 668, 672 (9th Cir. 2012).

10  The Ninth Circuit has explained that although courts

11  have sometimes used these two terms in shorthand

12  fashion as a single concept, they "are, in fact, two

13  distinct concepts."  Id. (citing Schwarzenegger, 374

14  F.3d at 802).  A purposeful availment analysis is most

15  often used in suits sounding in contract.  A purposeful

16  direction analysis, on the other hand, is most often

17  used in suits sounding in tort.  Schwarzenegger, 374

18  F.3d at 802.

19      Plaintiff's Complaint alleges that Defendant

20  breached certain contracts by delivering ground turkey

21  that contained bone pieces and chips that failed to

22  conform to the Parties' contracts and course of

23  dealing.  See, e.g., Compl. ¶¶ 41-92.  Plaintiff also

24  relies on Purchases Orders and the Guaranty between the

25  Parties as the basis for many of its claims.  See id.

26  at ¶¶ 42, 54, 76, 85.  As Plaintiff's Complaint is

27  grounded upon a breach of sales contracts between the

28

Parties[1], the Court finds that this case "sounds in contract" and thus, a purposeful availment analysis is appropriate here.

In the contract context, the fact that the defendant entered into a contract with a forum resident is not sufficient, standing alone, to establish purposeful availment. _Amini Innovation Corp. v. JS Imports, Inc._, 497 F. Supp. 2d 1093, 1103 (C.D. Cal. 2007) (citing _Burger King_, 471 U.S. at 478). Rather, the Court must utilize "a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" _Id._ (citing _Burger King_, 471 U.S. at 479). Thus, the Court should evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining "whether the defendant purposefully established minimum contacts within the forum." _Id._

---

[1] The Court notes that Plaintiff asserts one claim of negligence against Defendant, alleging that Defendant owed a duty of care to Plaintiff to use reasonable care in the manufacture of the ground turkey, and that Defendant breached this duty by manufacturing ground turkey containing bone fragments and chips. Compl. ¶¶ 93-93. These allegations, however, arise out of the contractual relationship between the Parties, and as such, a purposeful availment analysis is appropriate here. _See_ _Repwest Ins. Co. v. Praetorian Ins. Co._, 890 F. Supp. 2d 1168, 1188 (D. Ariz. 2012) ("In cases arising out of contractual relationships, including those involving related tort claims, the Ninth Circuit applies the 'purposeful availment' test").

1  (citing <u>Burger King</u>, 471 U.S. at 479).

2       Here, the Court finds that Plaintiff has failed to

3  show that Defendant has purposefully availed itself of

4  the privilege of conducting activities in the forum.[2]

5  In looking at the Parties' actual course of dealing, it

6  appears that the Plaintiff would make orders for raw

7  ground turkey products via written Purchase Orders

8  Defendant received at its offices in Iowa or Utah.

9  Porter Decl. ¶ 5.  Defendant would then deliver those

10 turkey products to Plaintiff's facility in Vernon,

11 California.  <u>See</u> Devore Decl. ¶ 10.  As noted above,

12 the Parties appear to have negotiated the Purchase

13 Orders via phone, email, or other interstate

14 communication given that they were located in different

15 states for the duration of the negotiations.  Defendant

16 also claims that the business between the Parties was

17 almost exclusively done through Purchase Orders.[3]

18 _____

19      [2] In its Opposition, Plaintiff cites to <u>New Tech Stainless</u>

20 <u>Steel Prods. Co. v. Sun Mfg. Corp.</u>, No. CV04-1181RGK(FMOX), 2004
   WL 1773416, at *3 (C.D. Cal. July 20, 2004) for the proposition

21 that "when a nonresident manufacturer sells goods or services in
   the forum state the requisite standard connection will always be

22 found." Opp'n 10:15-18.  However, the plaintiff's claims in that
   case were for patent infringement, California unfair competition,

23 and federal unfair competition.  Thus, <u>New Tech</u> is not on point
   for a purposeful availment argument, because <u>New Tech</u> applies the

24 purposeful direction analysis or the effects test in the context
   of an action sounding in tort.

25

26      [3] Plaintiff objects to paragraph 7, lines 19-21 of the
   declaration of Rick Porter in which he declares "The business

27 that [Defendant] did with Plaintiff was almost exclusively done
   through purchase orders" on the grounds that Mr. Porter lacks

28 personal knowledge.  However, the Court **OVERRULES** this objection
   because Mr. Porter statements contain sufficient foundation as he

Porter Decl. ¶ 7.  Plaintiff makes no showing that the negotiations regarding the Purchase Orders took place in California, that the Parties anticipated that the Purchase Orders would impact California, or that during the course of the Parties' nine-year relationship, they have ever met to conduct business in California.  See Beijing, 2013 WL 4040072, at *2; Porter Decl. ¶ 6[4].

Plaintiff alleges that Defendant solicited business from Plaintiff by promoting its products and prices through sales calls and regular communications to Plaintiff's employees and provides a declaration from its Senior Vice President, Aleen Devore.[5]  However, Ms.

has personal knowledge based upon his position as Defendant's Director of Commodity Sales.

[4] Plaintiff objects to paragraph 6, lines 6-8 of the declaration of Rick Porter in which he declares "No other [Defendant] employee ever met any representative of Plaintiff in California or elsewhere as far as I am aware" on the grounds that Mr. Porter lacks personal knowledge and the statement is irrelevant.  The Court **OVERRULES** this objection because (1) Mr. Porter's statements contain sufficient foundation as he has personal knowledge based upon his position as Defendant's Director of Commodity Sales, and (2) the statement is relevant because it is probative of a material fact, in that it tends to make the fact that Defendant never physically came to California to negotiate contracts more likely.

[5] Defendant objects to paragraph 4, lines 21-26 and paragraph 5, lines 2-4 of the declaration of Aleen Devore in which she declares that Defendant initiated the relationship between the Parties and that Defendant has continually solicited business from Plaintiff by promoting its product through sales calls and regular communications on the grounds that the statements are hearsay, lack foundation, and Ms. Devore lacks personal knowledge.  The Court **OVERRULES** these objections, because (1) Ms. Devore's statements contain sufficient foundation as she has personal knowledge based upon her position as Plaintiff's Senior Vice President of Manufacturing and Quality,

Devore does not attach any evidence of written communications or solicitations directed to Plaintiff by Defendant, nor does Ms. Devore identify which of Defendant's employees solicited Plaintiff.  Because Plaintiff only makes a bare allegation that Defendant continually solicited business from Plaintiff, the Court is hard pressed to conclude that those communications warrant a finding of specific jurisdiction over Defendant.  See Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica, 614 F.2d 1247, 1254 (9th Cir. 1980) ("[Defendant] validly argues that use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the state.").  Moreover, Defendant appears to clarify that it only periodically made sales calls to Plaintiff to advise it about changes or updates in the price of Defendant's products.  Porter Decl. ¶ 6.  In looking at the Parties' course of dealing as a whole, the Court reiterates that the business between the Parties was almost exclusively done through Purchase Orders and that Defendant never signed any agreement or met with Plaintiff's representatives in California or elsewhere.

Plaintiff alleges that the Guaranty specifically mentions that all products delivered are to conform to

---

and (2) the statements are not inadmissible hearsay.

California standards.  Opp'n 12:2-4.  However,
Plaintiff fails to cite a single case suggesting that
such facts, without more, would confer specific
jurisdiction over Defendant.  Indeed, the Guaranty was
signed by Defendant in Iowa (Porter Decl. ¶ 7), and
Plaintiff provides no evidence that the Guaranty or the
Purchase Orders are governed by California law.

Accordingly, because Plaintiff fails to provide
evidence supporting that negotiations regarding the
Purchase Orders took place in California, that the
Parties anticipated that the Purchase Orders would
impact California, or that they have ever met to
conduct business here in California, the Court finds
that it lacks specific jurisdiction over Defendant.

Because Plaintiff has not met its burden of proving
that personal jurisdiction over Defendants exists, the
Court **GRANTS** Defendant's Motion to Dismiss for lack of
personal jurisdiction.  Because the Court **GRANTS**
Defendant's Motion to Dismiss for lack of personal
jurisdiction, the Court **DENIES as moot** Defendant's
Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(3)
and **DENIES as moot** Defendant's Motion to Transfer.

### IV. CONCLUSION

For the reasons set forth above, this Court **GRANTS**
**without prejudice** Defendant's Motion to Dismiss
pursuant to Fed. R. Civ. P. 12(b)(2).  As such, the
Court **DENIES as moot** Defendant's Motion to Dismiss
//

1  //

2  //

3  pursuant to Fed. R. Civ. P. 12(b)(3) and **DENIES as moot**

4  Defendant's Motion to Transfer. The Clerk shall close this case.

5  **IT IS SO ORDERED.**

6  DATED: August 21, 2014    RONALD S.W. LEW

7  **HONORABLE RONALD S.W. LEW**
   Senior U.S. District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28